**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **MICHAEL BLAINE FAULKNER,** | § | |
| **Petitioner-Defendant,** | § | |
| | § | |
| **v.** | § | **3:14-CV-03011-D-BK** |
| | § | **(3:09-CR-00249-D-2)** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent-Plaintiff.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner, by and through counsel, filed a motion to vacate sentence under 28 U.S.C. § 2255, which was automatically referred to the magistrate judge. *See* 28 U.S.C. § 636(b) and *Special Order 3*. For the reasons that follow, it is recommended that the motion be **DENIED**.

**I. BACKGROUND**

Pursuant to a plea agreement, Petitioner pled guilty to conspiracy to commit mail and wire fraud and obstruction of justice by concealing assets, and was sentenced to 240 and 120 months' imprisonment, to be served consecutively, for a total sentence of 360 months. *United States v. Faulkner*, 3:09-CR-00249-D-2 (N.D. Tex. May 29, 2012), *aff'd*, No. 12-10616 (5th Cir. 2013) (dismissing appeal based on waiver of appeal in the plea agreement). Petitioner subsequently filed this timely section 2255 motion asserting that government coercion and ineffective assistance of counsel rendered his plea involuntary. Doc. 1 at 10. The government argues the section 2255 motion lacks merit, and Petitioner has filed a reply. Doc. 5; Doc. 7.

**II. ANALYSIS**

After conviction and exhaustion or waiver of the right to direct appeal, the Court presumes that a petitioner stands fairly and finally convicted. *See United States v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998)* (citing *United States v. Shaid, 937 F.2d 228, 231-32 (5th*

Cir. 1991) (*en banc*)).  Under section 2255, a petitioner can collaterally challenge his conviction

only on constitutional or jurisdictional grounds.  *See United States v. Willis*, 273 F.3d 592, 595

(5th Cir. 2001).

## A. Government Coercion

Petitioner asserts that he only entered a guilty plea after the government threatened to

sentence his wife, Chastity Faulkner, to a term of incarceration in excess of ten years.  Doc. 2 at

5; Doc. 1 at 14 (Petitioner's affidavit).  He also claims his wife "developed a severe life

threatening medical condition" during pretrial confinement, and that neither the Mansfield Law

Enforcement Center nor the United States Marshal Service would pay for the cost of medical

testing necessary to determine the cause of her illness, which included a peanut allergy.  Doc. 1

at 14; *see also* Crim. Doc. 1167 at 4-5 (Ms. Faulkner's first *Motion for Release on Bond*).

Petitioner argues that the government's threat, in light of his wife's serious illness, rendered

involuntary his guilty plea.  Doc. 1 at 14.

A guilty plea must be knowingly, voluntarily, and intelligently made to be

constitutionally valid.  *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000).  In

determining the voluntariness of a plea, the court considers all relevant circumstances, including

whether the defendant: (1) had notice of the charges against him; (2) understood the

constitutional protections he was waiving; and (3) had access to competent counsel.  *United

States v. Washington*, 480 F.3d 309, 315 (5th Cir. 2007).

A defendant ordinarily may not refute his sworn testimony given at a plea hearing while

under oath.  *Cervantes*, 132 F.3d at 1110.  Declarations made under oath in open court carry a

strong presumption of truth, forming a formidable barrier to relief in any subsequent collateral

proceedings.  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  A defendant must also overcome

the presumption of regularity and "great evidentiary weight" accorded court records.  *See United States v. Abreo,* 30 F.3d 29, 32 (5th Cir. 1994) (holding that signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly).

Here, the only conclusion supported by the record is that Petitioner's guilty plea was voluntary.  The Court of Appeals for the Fifth Circuit has held that prosecutors have broad discretion in plea negotiations and there is no intrinsic constitutional infirmity in promising leniency to a third party in exchange for a guilty plea.  *U.S. v McElhaney,* 469 F.3d 382, 385 (5th Cir. 2006) (*citing United States v. Nuckols,* 606 F .2d 566, 569 (5th Cir.1979)).  Even if Ms. Faulkner's illness and threat of incarceration influenced Petitioner's decision to plead guilty, the government's offer was not inherently coercive.  Ms. Faulkner was properly indicted by a grand jury in the same conspiracy as her husband, the evidence supported the charges against her, and there was no allegation that the government acted in bad faith by charging her or using the fact of her potential incarceration on those charges to influence Petitioner's decision to enter a guilty plea.  Crim. Doc. 1007; Crim. Doc. 1343-1 at 17-43, Ms. Faulkner's Presentence Report (PSR) ¶¶ 56-62, 67, 71, 98, 102, 106, 108-109, 112, 121, 135, 139.  Indeed, nowhere in his pleadings does Petitioner assert, much less show, that the prosecutor engaged in plea negotiations in bad faith.

Additionally, at rearraignment, the Court engaged in an extensive colloquy with Petitioner to ensure that his plea was voluntary.  Petitioner testified that he understood the nature of the charges against him, had the opportunity to read his plea agreement and the plea agreement supplement and carefully discuss them with his lawyer, and understood that he was giving up valuable rights by pleading guilty.  Crim. Doc. 1667 at 5-7, 12-14.  Petitioner

conceded that no promises or assurances were made to induce him to plead guilty, other than those contained in the plea agreement and the verbal understanding that his plea agreement was tied to that of his wife (as explained by the government at the plea hearing). Crim. Doc. 1667 at 8-9. Furthermore, Petitioner denied that anyone had threatened him or attempted to force him to plead guilty, and admitted that he was pleading guilty voluntarily and of his own free will. Crim. Doc. 1667 at 12. On this testimony, the Court concluded that Petitioner's plea was knowing and voluntary. Crim. Doc. 1667 at 8-9, 12, 28.

Petitioner relies extensively on *Nuckols* to argue that "pleas based upon threats against third parties are deserving of a more rigorous standard of review." Doc. 7 at 3; *see also* Doc. 2 at 4-5. However, in *Nuckols*, unlike in this case, the defendant's wife had <u>not</u> been indicted and it was unclear whether she was even an accomplice and, thus, whether her prosecution was justified. *Nuckols, supra,* 606 F.2d at 570. Consequently, the court in *Nuckols* concluded that the defendant should be "afforded a hearing to determine whether the threats to prosecute [his] wife were founded in good faith upon probable cause." *Id.*

Here, in conformity with *Nuckols* the Court took special care to ensure that Petitioner's guilty plea was voluntary. "If [an accused] elects to sacrifice himself" for the benefit of a third party, "that is his choice." *Nuckols, supra,* 606 F.2d at 569. Thus, upon ensuring that Petitioner's decision to plead guilty was voluntary and not the product of coercion, the Court did not err in respecting Petitioner's choice to help his wife.

Accordingly, this claim fails.

**B. Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697. To prove the deficient performance prong of the *Strickland* test, a petitioner must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* To prove prejudice in the context of a guilty plea, a petitioner must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This showing requires more than mere speculation or conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). The petitioner bears the burden of demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

*Failure to Take Remedial Actions*

Petitioner asserts that his counsel rendered ineffective assistance when he failed to take any remedial action regarding the prosecution's allegedly coercive techniques. Doc. 2 at 8-9. He maintains that counsel should have objected in order to stop the government's misconduct. Doc. 2 at 9. However, he does not suggest when the objection should have been lodged or the legal basis for it. Moreover, the record belies Petitioner present claims of coercion, as he did not complain about the government's tactics at the time of his guilty plea or, seven months later, at

sentencing.  As discussed previously herein, the prosecution did not infringe on Petitioner's

constitutional rights when it conditioned his wife's plea deal on his agreement to also plead

guilty.  Consequently, defense counsel's failure to raise an objection regarding the prosecution's

coercive techniques did not fall below an objective standard of reasonableness.  *See United*

*States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) ("[F]ailure to make a frivolous objection

does not cause counsel's performance to fall below an objective level of reasonableness.").

Accordingly, this claim also fails.

*Failure to Accurately Inform about Consequences of Plea*

Next, Petitioner asserts that defense counsel failed to accurately inform him of the

consequences of his guilty plea.  Specifically, he claims counsel convinced him that he would

receive a sentence of twenty years' incarceration if he pleaded guilty, and failed to inform him

that the sentence for any obstruction conviction would be grouped and run consecutively.[1]  Doc.

1 at 14; Doc. 2 at 10.  Additionally, Petitioner alleges that defense counsel promised that, at

most, a sentence of one or two years' incarceration would be imposed for any obstruction

conviction.  Doc. 1 at 14.  According to Petitioner, defense counsel also indicated that if

Petitioner proceeded to trial and was found guilty, a sentence of 108 years' incarceration would

follow.  Doc. 1 at 14.  Petitioner argues that as a result of counsel's mistaken advice and

assurances, he entered a guilty plea that he otherwise would not have.  Doc. 1 at 15.

Petitioner's assertions are contradicted by the record.  Petitioner signed a plea agreement

with a Rule 11(c)(1)(C) agreement that limited his exposure to 360 months.  Crim. Doc. 1130 at

1-2 [sealed].  At rearraignment, Petitioner affirmed his understanding that he faced maximum

---

[1] Petitioner uses the term concurrently instead of consecutively.  However, that appears to have
been a typographical error.

sentences of 30 years on count one and 20 years on count five, and that he could be required to serve the terms consecutively.  Crim. Doc. 1667 at 15-16.  Petitioner explicitly acknowledged that, upon his guilty pleas to both counts one and five, the Court had the discretion to impose consecutive sentences, for an aggregate sentence of up to 360 months.  Crim. Doc. 1667 at 17-18.  Petitioner confirmed that no one, including defense counsel, had made any specific predictions or promises about the sentence he would receive.  Crim. Doc. 1667 at 19.  He also confirmed his understanding that the Court alone would decide the length of his sentence.  Crim. Doc. 1667 at 19.

As highlighted above, the record does not support Petitioner's assertions that counsel promised a 20-year sentence if he pleaded guilty and that he would be sentenced to no more than one or two years for any obstruction conviction.  Petitioner offers only his self-serving affidavit in support of his claims.  Doc. 1 at 14.  And while Petitioner conveniently avers that he would not have pled guilty had he known his counsel misled him, it is irrefutable that if Petitioner had not accepted the government's agreement to cap his sentence exposure to 360 months' imprisonment, he would have faced a very high sentence, just as counsel warned.  The guideline range for only the two counts of conviction was 360 months to life imprisonment.  Crim. Doc. 1670 at 22.  Before his guilty plea, he also faced exposure on the remaining counts subsequently dismissed pursuant to the plea agreement.  Crim. Doc. 1670 at 27-28.  Furthermore, at sentencing, the Court noted:

> This is a case in which Mr. Faulkner has benefited by his plea agreement.  The evidence in this case. . . .is overwhelming, and had Mr. Faulkner not reached a favorable plea agreement, in the court's view from assessing the evidence in a very lengthy trial as well as what's before me for sentencing, given Mr. Faulkner's criminal history, he would be looking at a very, very long sentence, if not life imprisonment, and so he negotiated a favorable disposition by his plea agreement.

Crim. Doc. 1670 at 22.

In light of the record, the Court concludes that counsel did not perform deficiently in advising Petitioner about the consequences of his plea.  Even assuming deficient performance, Petitioner cannot meet the heavy burden of showing prejudice – namely that, but for counsel's deficient performance, he would have insisted on going to trial.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Accordingly, this claim has no merit.

*Failure to Prepare for Trial*

Lastly, Petitioner alleges that his attorney failed to prepare for trial, and that this failure contributed to Petitioner's decision to plead guilty.  Doc. 2 at 10.  In support of his claim, he offers defense counsel's admission that due to the large "amount of discovery material provided by the government, [he] was not able to review all of it."  Doc. 1 at 17.  Counsel urges that he simply did not have the time or resources to review all of discovery materials.  Doc. 1 at 18.

As has been discussed in detail here, Petitioner knowingly and voluntarily entered an informed plea of guilty, thereby avoiding trial.  Other than his conclusory and self-serving statement, there is no evidence in the record that his plea was in any way induced by his attorney's lack of preparedness for trial.  Even if accepted as true, Petitioner has not established that counsel's failure to review all of the discovery material before Petitioner's decision to plead guilty was made is an error so fundamental that counsel was not functioning as counsel guaranteed by the Sixth Amendment.  It is telling that Petitioner does not suggest what, if any, evidence supporting his innocence would have been discovered had counsel been able to complete his review of the discovery materials provided by the government.

The fact is, despite Petitioner's self-serving and conclusory assertions that he would have proceeded to trial, the evidence against him was "overwhelming."  Crim. Doc. 1670 at 22.  And considering that if had he chosen trial over his plea agreement with the government, Petitioner

8

would have faced life imprisonment, the Court concludes that Petitioner cannot meet his burden of demonstrating that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted in proceeding to trial.  *See Hill, 474 U.S. at 59*; *see also United States v. Pineda, 988 F.2d 22, 23 (5th Cir. 1993)* ("mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.").  Accordingly, this claim also fails.

### C. Evidentiary Hearing

Petitioner requests an evidentiary hearing.  Doc. 2 at 11.  However, "[w]hen the files and records of a case make manifest the lack of merit of a section 2255 [motion], the trial court is not required to hold an evidentiary hearing."  *United States v. Hughes, 635 F.2d 449, 451 (5th Cir. 1981)*; *see also Cervantes, 132 F.3d at 1111* (petitioner was not entitled to an evidentiary hearing because he did not meet his burden of proof under section 2255).  Accordingly, because Petitioner's claims lack merit, for the reasons stated above, no evidentiary hearing is required in this section 2255 proceeding.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that Petitioner's section 2255 motion be **DENIED**.

SIGNED August 5, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE